# In re Hilario ROMALEZ-Alcaide, Respondent

File A74 108 648 - San Diego

*Decided May 29, 2002*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

For purposes of determining eligibility for cancellation of removal pursuant to section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (Supp. IV 1998), continuous physical presence is deemed to end at the time an alien is compelled to depart the United States under threat of the institution of deportation or removal proceedings.

FOR RESPONDENT: David R. Blake, Esquire, Oceanside, California

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Kathleen M. Zapata, Assistant District Counsel

BEFORE: Board En Banc: SCIALABBA, Acting Chairman; DUNNE, Vice Chairman; SCHMIDT, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, GUENDELSBERGER, GRANT, MOSCATO, MILLER, BRENNAN, OSUNA, OHLSON, and HESS, Board Members. Concurring Opinion: PAULEY, Board Member. Dissenting Opinion: ROSENBERG, Board Member, joined by ESPENOZA, Board Member.

FILPPU, Board Member:

We dismiss the respondent's appeal from a March 16, 1998, decision denying his application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b) (Supp. IV 1998). We agree with the Immigration Judge that the respondent's two short departures from the United States in 1993 and 1994, both under the threat of deportation, constituted breaks in the respondent's accrual of continuous physical presence for purposes of cancellation of removal.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts are not in dispute. The respondent is a native and citizen of Mexico who initially entered the United States in 1984. In January 1993 and April 1994, he departed the United States under threat of deportation. On each occasion, the respondent remained in Mexico for a day or 2 and then unlawfully returned to the United States.

A Notice to Appear (Form I-862) commencing removal proceedings was personally served on the respondent and filed with the Immigration Court in July of 1997. The respondent was charged with removability under section 212(a)(6)(A)(i) of the Act, 8 U.S.C. § 1182(a)(6)(A)(i) (Supp. III 1997), because of a 1992 entry he made without having been admitted or paroled after inspection. The respondent conceded removability from the United States and applied for cancellation of removal under section 240A(b) of the Act and voluntary departure under section 240B(b) of the Act, 8 U.S.C. § 1229c(b) (Supp. III 1997). But for his two very short departures under the threat of deportation, the respondent satisfied the "continuous physical presence" requirement for cancellation of removal.

The Immigration Judge found that the respondent had failed to meet both the 10-year continuous physical presence requirement and the "exceptional and extremely unusual hardship" requirement for cancellation of removal, and he concluded that the respondent did not merit such relief as a matter of discretion. However, the Immigration Judge granted the respondent's request for voluntary departure. The respondent's timely appeal challenges only the denial of his application for cancellation of removal.

## II. ISSUE

We confine our inquiry to whether the respondent has accrued the 10 years of continuous physical presence needed for cancellation of removal. We reject his contention that the special rule set forth in section 240A(d)(2) of the Act is the exclusive measure of what constitutes a break in continuous physical presence. We hold that a departure that is compelled under threat of the institution of deportation or removal proceedings is a break in physical presence for purposes of section 240A(b)(1)(A) of the Act.[1]

## III. RELEVANT STATUTE

Section 240A(b)(1)(A) of the Act provides that the Attorney General may cancel removal and adjust an alien's status to that of a lawful permanent resident if, among other requirements, the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of the application for cancellation of removal.

Section 240A(d) of the Act sets forth special rules relating to continuous residence and continuous physical presence. The respondent argues that his departures are not "breaks" in presence because they do not run afoul of these special rules. Section 240A(d)(2) provides as follows:

---

[1] The United States Court of Appeals for the Tenth Circuit noted, but did not resolve, a related issue in *Rivera-Jimenez v. INS*, 214 F.3d 1213 (10th Cir. 2000).

TREATMENT OF CERTAIN BREAKS IN PRESENCE.—An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

## IV.  ANALYSIS

### A.  Statutory Language

We start with the language of the statute itself.  Section 240A(b)(1)(A) requires an alien to have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding" the application.  Absent further statutory qualification or exception, this "continuous physical presence" requirement does not permit an applicant to make any departures whatsoever from the United States during the qualifying period.

In this respect, the statute parallels its predecessor suspension of deportation provisions at section 244(a) of the Act, 8 U.S.C. § 1254(a) (1982).  For example, former section 244(a)(1) specified, in part, that an applicant for suspension of deportation must have "been physically present in the United States for a continuous period of not less than seven years immediately preceding the date" of the application.  In *INS v. Phinpathya*, 464 U.S. 183 (1984), the United States Supreme Court ruled that the literal language of this identically worded predecessor provision permitted no exception for departures of any character.

Congress responded to the Supreme Court's *Phinpathya* ruling by creating an exception for "brief, casual, and innocent" departures in former section 244(b)(2) of the Act, 8 U.S.C. § 1254(b)(2) (Supp. IV 1986).  This early exception to the rigors of absolutely uninterrupted physical presence has been replaced by the more objective provisions of section 240A(d)(2) of the Act.  On the strength of the current statutory exception, the respondent argues that any departure of 90 days or less does not break continuous physical presence, including a departure made under threat of the institution of deportation proceedings.

The statutory language, however, does not literally forgive any single departure of 90 days or less or aggregate departures of 180 days or less.  Further, it does not purport to be the *exclusive* rule respecting *all* departures.  Rather, as its caption announces, it addresses the treatment of "certain breaks" in presence, strongly implying that there can be "breaks" other than those which exceed the 90- or 180-day statutory limits.  Section 240A(d)(2) of the Act.

The statute also directs that an alien "shall be considered to have failed to maintain continuous physical presence" by a departure exceeding 90 days or

aggregate departures exceeding 180 days. *Id.* The objective command that departures of certain lengths "shall" break continuous physical presence implies that shorter departures are acceptable, but it does not specifically exempt all such shorter departures. It does not, for example, formally exempt a departure of 90 or fewer days resulting from enforcement of an order of removal under current law or an order of deportation under prior law. Nor, as in this case, does it specifically forgive a departure following an arrest by the Border Patrol with the threat that formal proceedings will be commenced absent the alien's voluntary return to his or her native country.

Thus, the literal language of the statute provides support by implication for the arguments of both the Immigration and Naturalization Service and the respondent, but it does not, by itself, answer the question raised in this case. We must therefore look beyond the language of section 240A itself.

## B. Statutory Effect of Removal

The statute as a whole does not support the respondent's contention that section 240A(d)(2) of the Act preserves an alien's eligibility for cancellation of removal for any departure of 90 days or less. Specifically, section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5) (2000), provides that an alien who departs the country under an order of removal and unlawfully reenters the United States "may not apply for any relief under this Act." Thus, pursuant to this section of the statute, upon reentry the alien is barred from seeking cancellation of removal, even if he returns within 90 days.[2]

Under the respondent's construction of the statute, an alien who departed under a formal order of removal could nevertheless retain eligibility for cancellation of removal, despite this statutory bar to all relief for persons who illegally return after being removed. This would be possible if the removed alien returned *lawfully* within 90 days of the execution of an order of removal, for example, as a nonimmigrant with the necessary waivers to obtain urgent medical care. Although such an outcome is not foreclosed by the literal language of the statute, it would be inconsistent with the purpose of both removal and admission in most nonimmigrant categories.

An order of removal is intended to end an alien's presence in the United States, as was an order of deportation under prior law. As the Supreme Court has noted, the "obvious purpose of deportation is to terminate residence." *Mrvica v. Esperdy*, 376 U.S. 560, 568 (1964) (holding that departure under

---

[2] The courts appear divided over whether section 241(a)(5) of the Act applies to orders of deportation issued under prior law. *Compare Bejjani v. INS*, 271 F.3d 670, 687 (6th Cir. 2001) (holding that section 241(a)(5) did not apply to a reentry taking place before its enactment), *and Castro-Cortez v. Reno*, 239 F.3d 1037 (9th Cir. 2001) (same), *with Velasquez-Gabriel v. Crocetti*, 263 F.3d 102 (4th Cir. 2001) (applying section 241(a)(5) to an entry occurring under prior law where there was no showing of detrimental reliance on prior law).

an order of deportation terminates "residence" for purposes of relief under section 249 of the Act, 8 U.S.C. § 1259 (1964)). Furthermore, admission as a nonimmigrant generally contemplates the alien's departure after the authorized period of stay ends or the purpose of the trip is completed. We therefore believe it would be contrary to the very reason for deportation and removal orders, as well as enforced voluntary departures, to read section 240A(d)(2) of the Act as preserving the period of physical presence acquired prior to an enforced departure for an alien who returns within 90 days of the enforcement action.[3]

## C.  Related Regulations

The respondent's proposed reading of section 240A(d)(2) is also not consistent with the Attorney General's regulations governing the continuous physical presence requirement for special rule cancellation of removal. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, § 309(f), 110 Stat. 3009-546 ("IIRIRA"), *as amended by* Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit. II, § 203(b), 111 Stat. 2193, 2198 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997) ("NACARA").

Applicants for special rule cancellation of removal under the NACARA are subject to either a 7-year or 10-year continuous physical presence requirement consistent with the suspension of deportation provisions of prior law. They are also exempted from the so-called "stop-time" provisions of section 240A(d)(1) of the Act, which would halt the accrual of continuous presence upon, for example, the service of a Notice to Appear. Departures from the United States by applicants for NACARA special rule cancellation, however, are not governed by the "brief, casual, and innocent" rule of former law. Instead, the 90- and 180-day provisions of section 240A(d)(2) apply to departures made by special rule cancellation applicants, just as section 240A(d)(2) applies to the case now before us.

---

[3]  We have previously drawn a distinction between departures pursuant to an order of deportation and voluntary departures under the threat of deportation in the context of assessing "residence" for purposes of determining eligibility for relief under section 249 of the Act. *See Matter of Contreras-Sotelo*, 12 I&N Dec. 596 (BIA 1967) (holding that voluntary departure after commencement of deportation proceedings, but before a deportation order, does not break "residence" under section 249); *Matter of Young*, 11 I&N Dec. 38 (BIA 1965) (holding that voluntary departure under threat of deportation does not break "residence" under section 249). We need not revisit those decisions here, except to note that we have not drawn any such distinction on the issue of continuous physical presence. *Matter of Barragan*, 13 I&N Dec. 759 (BIA 1971) (holding that a voluntary departure in lieu of the institution of formal deportation proceedings was a meaningful departure that broke physical presence for suspension of deportation purposes), *aff'd*, *Barragan-Sanchez v. Rosenberg*, 471 F.2d 758 (9th Cir. 1972).

Importantly, in the context of the NACARA, 8 C.F.R. § 240.64(b)(3) (2001) provides that

> a period of continuous physical presence is terminated whenever an alien is removed from the United States under an order issued pursuant to any provision of the Act or the alien has voluntarily departed under the threat of deportation or when the departure is made for purposes of committing an unlawful act.

Therefore, the Attorney General has interpreted the continuous physical presence requirement for NACARA special rule cancellation of removal as being broken or "terminated" by departure under an order of removal, an order of deportation, or the "threat of deportation." *Id.* This regulation conflicts with the respondent's construction of section 240A(d)(2), even though the regulation specifically applies only in the context of NACARA applications. Indeed, it is not apparent how we could find the respondent eligible for cancellation of removal without adopting a construction of the statute that is directly at odds with the position adopted by the Attorney General in 8 C.F.R. § 240.64(b)(3).

## D. Prior Law

Under prior law, a voluntary departure under threat of deportation was considered a break in continuous physical presence and was treated the same as a departure pursuant to an order of deportation. *See Hernandez-Luis v. INS*, 869 F.2d 496, 498 (9th Cir. 1989); *McColvin v. INS*, 648 F.2d 935 (4th Cir. 1981); *Vargas-Gonzalez v. INS*, 647 F.2d 457, 458 (5th Cir. 1981); *Segura-Viachi v. INS*, 538 F.2d 91 (5th Cir. 1976); *Matter of Barragan*, 13 I&N Dec. 759 (BIA 1971), *aff'd*, *Barragan-Sanchez v. Rosenberg*, 471 F.2d 758 (9th Cir. 1972); *see also INS v. Rios-Pineda*, 471 U.S. 444, 450 n.2 (1985).

In this respect, former section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994), in addition to providing for deportation hearings, allowed certain aliens who admitted their deportability to leave voluntarily without the need for formal proceedings. Former section 242(b) provided, in pertinent part, as follows:

> In the discretion of the Attorney General, and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 241 if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraph (2), (3), or (4) of section 241(a).[4]

---

[4] Similar authority exists today in section 240B(a)(1) of the Act, 8 U.S.C. § 1229c(a)(1) (2000).

The respondent's departures in 1993 and 1994 were governed by these provisions, which counsel for the respondent characterized below as "like a plea bargain." The alien leaves with the knowledge that he does so in lieu of being placed in proceedings. The clear objective of an enforced departure is to remove an illegal alien from the United States. There is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence.

The respondent's departures under the threat of proceedings broke his presence under the law in effect at the time those departures occurred. The statute has since changed, and the "brief, casual, and innocent" test of prior law no longer applies in ordinary cancellation of removal cases. But we do not read the enactment of the more objective measures contained in section 240A(d)(2) as having inadvertently negated the effect of the respondent's departures for purposes of accruing continuous physical presence.

## E. Legislative History

We have uncovered nothing in the legislative history to the IIRIRA that substantially helps to resolve this case. In general, however, Congress sought to deter illegal immigration to the United States by curbing the incentive for aliens to extend their stays in this country and prolong their cases in order to gain immigration benefits. *See* H.R. Rep. No. 104-828 (1996), 1996 WL 563320; *see also* H.R. Rep. No. 104-469(I) (1996), 1996 WL 168955. We deem it contrary to the overall objectives of the IIRIRA to allow an alien to continue to accrue time for purposes of obtaining relief after the alien departs under a formal order of deportation or removal, or under the threat of such an order.

## V. CONCLUSION

In sum, we find that the respondent's departures under threat of deportation broke his continuous physical presence in this country. Consequently, he cannot meet the 10-year continuous presence requirement for cancellation of removal. *See* section 240A(b)(1)(A) of the Act. Our holding is consistent with the literal language of the statute. It is also supported by the statutory purpose behind enforcement actions, by the Attorney General's regulatory interpretation of the continuous presence requirement for special rule cancellation, and by the historical treatment of such breaks under prior law. Consequently, the Immigration Judge correctly denied the respondent's application for cancellation of removal.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart from

the United States, without expense to the Government, within 30 days from the date of this order or any extension beyond that time as may be granted by the district director. *See* section 240B(b) of the Act; 8 C.F.R. §§ 240.26(c), (f) (2000). In the event the respondent fails to so depart, the respondent shall be removed as provided in the Immigration Judge's order.

**NOTICE:** If the respondent fails to depart the United States within the time period specified, or any extensions granted by the district director, the respondent shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, 1259 (2000). *See* section 240B(d) of the Act.

*CONCURRING OPINION:* Roger A. Pauley, Board Member

## I. BACKGROUND

The majority have determined that the respondent's "voluntary" departure from the United States, under threat of the institution of removal proceedings, constitutes a break in presence that renders the respondent *ineligible* to satisfy the continuous physical presence requirement for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2000). Were it not for 8 C.F.R. §§ 240.64(b)(2) and (3) (2001), I would have filed an opinion concurring only in the result. Because of the regulations, I find that I am constrained also to concur in the opinion insofar as it relies on those provisions.[1] I write, however, to express my doubts that these regulations, which were promulgated under the previous Attorney General, are consistent with the statute and to set forth an alternative approach that I believe is more consistent with the statutory scheme.

The cited regulations apply only to certain aliens from certain Central American and Eastern European nations for whom Congress enacted, in the so-called NACARA statute,[2] especially favorable provisions enabling them to qualify for relief from deportation or removal. Such provisions include the inapplicability of the "stop-time rule" for purposes of establishing the requisite period of continuous physical presence and (as implemented by subsequent regulations as to the Central American group of aliens) a

---

[1] It is settled that a "regulation promulgated by the Attorney General has the force and effect of law as to this Board and immigration judges, and neither has any authority to consider challenges to regulations implemented by the Attorney General, any more than there is authority to consider constitutional challenges to the laws we administer." *Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989); *see also Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992).

[2] Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, tit. II, 111 Stat. 2193, *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997).

rebuttable presumption of extreme hardship. *See* 8 C.F.R. § 240.64(d). The regulations insofar as here pertinent provide as follows:

> For purposes of this subpart H, a single absence of 90 days or less or absences which in the aggregate total no more than 180 days shall be considered brief.
>
> . . . .
>
> (2) For applications for special rule cancellation of removal made under section 309(f)(1) of IIRIRA, as amended by NACARA, the applicant shall be considered to have failed to maintain continuous physical presence in the United States if he or she has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days. *The applicant must establish that any period of absence less than 90 days was casual and innocent and did not meaningfully interrupt the period of continuous physical presence in the United States.*
>
> (3) For all applications made under this subpart, a period of continuous physical presence is terminated whenever an alien is removed from the United States under an order issued pursuant to any provision of the Act or the alien has voluntarily departed under the threat of deportation or when the departure is made for purposes of committing an unlawful act."

8 C.F.R. § 240.64(b) (emphasis added).

No regulation comparable to the italicized portions quoted above exists with respect to aliens applying for the generally applicable cancellation of removal relief that is at issue in this case. When the quoted regulations were initially published for comment in 1998, a number of commenters suggested that, in light of the ameliorative purposes of the NACARA, the regulations did not go far enough; and that it was contrary to the statute to disqualify a special rule cancellation of removal applicant based upon the nature of his or her absences. Responding to these arguments, the Department of Justice stated as follows:

> Neither NACARA nor the Act, as amended by IIRIRA,[3] precludes such an evaluation, and when the 90/180-day rule is read within the context of immigration reform under IIRIRA, it is apparent that Congress intended certain kinds of departures, such as those made in furtherance of criminal offenses, to terminate continuous physical presence.

Suspension of Deportation and Special Rule Cancellation of Removal for Certain Nationals of Guatemala, El Salvador, and Former Soviet Bloc

---

[3] Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546. As part of the IIRIRA, Congress enacted section 240A(d)(2) of the Act, which provides that

> an alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) [setting forth, inter alia, the relief of cancellation of removal for certain nonpermanent resident aliens, the successor to suspension of deportation relief under the previous Act] if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

The provision was made applicable retrospectively to certain suspension of deportation applicants through the so-called "transitional rules," which were set forth in section 309(c)(5) of the IIRIRA, 110 Stat. at 3009-627.

Countries, 64 Fed. Reg. 27,856, 27,863 (1999). Specifically alluding to 8 C.F.R. § 240.64(b)(3), the Department also noted that that regulation "identifies specific departures that have long been considered to break continuous physical presence in the context of suspension of deportation adjudications." *Id.*

## III. MAJORITY'S HOLDINGS

The Department of Justice, in fashioning the above-quoted regulations applicable to NACARA applicants—a category of aliens whom Congress believed deserving of more generous treatment under the cancellation of removal statutes than other applicants—nevertheless determined that such NACARA applicants' continuous physical presence was interrupted upon a "voluntary" departure under threat of deportation proceedings, or one made with intent to commit an unlawful act. The majority therefore correctly conclude that the necessary implication from the regulations is that ordinary, non-NACARA applicants for cancellation of removal relief under section 240A(b)(1) of the Act, such as the respondent in this case, are also subject to this regulatory interpretation.[4]

The majority also rely on another ground, in which I cannot concur, for reaching their result, namely section 241(a)(5) of the Act, 8 U.S.C. § 1231(a)(5) (2000), which provides that an alien who reenters the United States "illegally after having been removed or having departed voluntarily, under an order of removal," is ineligible for any relief. Section 241(a)(5) of the Act, properly read, in no way supports the majority's approach. The majority's argument that the existence of section 241(a)(5) is an independent ground for its holding that a coerced "voluntary" departure, not under order, breaks continuous physical presence depends on an extraordinary construction of that statute. The majority reach their conclusion by first essentially reading out of the statute its clear requirement that an alien have returned "illegally" in order to be ineligible for any relief. Thus enabled by this ipse dixit removal of this impediment from the scene,[5] they then argue

---

[4] The dissenting opinion of Board Member Rosenberg would escape the force of the regulations because they are not in terms applicable "to an applicant for regular cancellation of removal." *Matter of Romalez*, 23 I&N Dec. 423, 444 (Rosenberg, dissenting). But her opinion gives no reason, or conceivable explanation, why the Attorney General would wish the regulations, which apply a strict interpretation of the break-in-presence statute to the favored class of NACARA special rule cancellation of removal applicants, not also to apply to regular cancellation applicants such as the respondent. In these circumstances, I believe the regulations are binding upon the Board and may not be disregarded.

[5] The majority state that while "such an outcome" (i.e., that an alien who lawfully returns to this country following his ordered removal retains eligibility for cancellation relief) "is not foreclosed by the literal language of the statute," which appears to be rather an understatement,

(continued...)

that a coerced "voluntary" departure not under order is the equivalent of an ordered departure for purposes of interrupting previously acquired physical presence time. But Congress attached disability for relief consequences only to an alien's violation of an *ordered* departure and, even then, despite the majority's inexplicable willingness to disregard section 241(a)(5)'s plain language, only when the alien returns illegally. Unlike the majority, I would give effect, as do the regulations,[6] to Congress's inclusion of the term "illegally" in section 241(a)(5) and thus draw the opposite conclusion that no such equivalence exists between ordered departures under that statute and coerced "voluntary" departures not under order as regards the ability of an alien to preserve accrued continuous physical presence time for cancellation of removal relief. Therefore, in my view, the sole defensible basis for the majority's holding that the respondent's "voluntary" departure interrupted his continuous presence so as to render him ineligible for cancellation of removal is the above-quoted regulations at 8 C.F.R. §§ 240.64(b)(2) and (3).

## IV. PROBLEMS WITH THE REMAINING APPROACH BASED ON THE REGULATIONS

But the difficulty with the regulations, from a statutory construction standpoint, is that they are founded on nothing more than speculation that because a "voluntary" departure under threat of removal proceedings (and all other less than 90-day departures that were noncasual or noninnocent under prior law, though these are not before us in this case) was of a type long considered to break continuous physical presence, Congress could not have intended to eliminate this basis for finding a break in presence when it enacted the 90/180-day break-in-presence statute in 1996 as part of the IIRIRA. To the contrary, I believe that that is exactly what Congress intended to do, and did, and that its intent is reflected in the statutory scheme.

The regulations (the soundness of which the majority opinion does not question) continue the former "brief, casual, and innocent" test for determining whether an alien's departure constituted a break in continuous physical presence, bowing only to Congress's enactment of section 240A(d)(2) as a substitute for the "brief" component of that test. Indeed, the final sentence of 8 C.F.R. § 240.64(b)(2), set forth above, plainly reflects a view that, although Congress allowed the statute that embodied the "brief,

---

[5] (...continued)
such a reading "would be inconsistent with the purpose of both removal and admission in most nonimmigrant categories." *Matter of Romalez, supra*, at 426. The "literal" meaning, however, is the reading accorded the statute in the regulations. *See* 8 C.F.R. § 241.8(a)(3) (2001) (instructing immigration officers in making a determination whether an alien has returned unlawfully).

[6] *See supra* note 5.

casual, and innocent" standard (former section 244(b)(2) of the Act, 8 U.S.C. § 1254(b)(2) (1994)) to expire in the IIRIRA, it nevertheless intended the "casual" and "innocent" branches of that statute to survive and continue in full force.[7]

This is a remarkable conclusion and one that, as the dissenting opinion points out, is at odds with dicta in a prior decision of the Board.[8] The regulation assumes, in effect, that Congress's failure to carry forward the relevant provisions of former section 244(b)(2) of the Act was an oversight. I cannot agree. Instead, as it is undeniable that former section 244(b)(2) was *not* carried forward by the IIRIRA but was allowed to lapse, it seems an unavoidable conclusion that that statute is inapplicable here and should not have been effectively restored, as to its "casual" and "innocent" branches, by the regulations. This is particularly so because, as will be shown in the final segment of this opinion, giving effect to the elimination of the "casual" and "innocent" test for less than 90-day departures results in a perfectly reasonable (even preferable) scheme. Indeed, had Congress desired the outcome reflected in the regulations and the majority's approach, it would have been a relatively simple drafting task to have retained section 244(b)(2), alongside the new break-in-presence provision in section 240A(d)(2), by merely dropping the term "brief" (with conforming editorial changes) from old section 244(b)(2). Congress's failure to do this is powerful evidence—

---

[7] The majority opinion's disregard of 8 C.F.R. § 240.64(b)(2), and its implicit attempt to narrow the scope of its opinion as one that decides only that, by virtue of 8 C.F.R. § 240.64(b)(3), a forced "voluntary" departure constitutes a break in presence, is unsupportable. The two regulations are not severable but rather are inextricably intertwined. Indeed, subparagraph (b)(3), on which the majority relies, reflects merely a specific application and clarification of subparagraph (b)(2) and is subordinate to it. Therefore, the majority cannot reasonably assert (much as they might wish to) that adherence to the regulations requires that the "casual" and "innocent" tests be deemed only partially resurrected insofar as coerced "voluntary" departures under 8 C.F.R. § 240.64(b)(3) are concerned. Rather, because of the linkage between subparagraphs (b)(2) and (b)(3), it is a case of "in for a penny, in for a pound." Giving effect to the cited regulations (as we must, *see supra* notes 1, 4) undeniably means accepting that the "casual" and "innocent" doctrine is deemed resurrected, with respect to departures of less than 90 days, in its full force and extent.

My assertion above that subparagraph (b)(3) is subordinate to subparagraph (b)(2) seems obvious on the face of the provisions. I note further that although it is arguable that subparagraph (b)(3) was even unnecessary, its inclusion may have reflected a desire to make certain (even though no court appears to have held to the contrary under the old "brief, casual and innocent" test) that all judges would continue to construe the particular kinds of departures there described (i.e., "voluntary" departures under threat of the commencement of deportation proceedings and departures undertaken with intent to perform an illegal act) as not "innocent" under the standard announced in subparagraph (b)(2). Moreover, subparagraph (b)(3) covers suspension applications as well as special rule cancellations (i.e., it reaches "all applications made under this subpart"), whereas subparagraph (b)(2) covers only the latter type of applications.

[8] *See Matter of Collado*, 21 I&N Dec. 1061, 1064 n.4 (BIA 1998).

particularly when coupled, as the majority concedes, with the absence of any legislative history to the contrary—of its intent *not* to carry forward the "casual" and "innocent" branches of the prior statute, notwithstanding the contrary conclusion reflected in 8 C.F.R. § 240.64(b)(2), which requires applicants for special cancellation of removal under the NACARA to prove that "any period of absence less than 90 days was casual and innocent and did not meaningfully interrupt the period of continuous physical presence in the United States."

Former section 244(b)(2) of the Act provided, in similar terms, as follows:

> An alien shall not be considered to have failed to maintain continuous physical presence in the United States under paragraphs (1) and (2) of subsection (a) [setting forth the suspension of deportation remedy] if the absence from the United States was brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence.

Under this statute, the history of which is well known,[9] the federal courts experienced no problem (as the majority also observe) in concluding that departures such as that made by the respondent were not "brief, casual, and innocent." *E.g.*, *Hernandez-Luis v. INS*, 869 F.2d 496, 498 (9th Cir. 1989) ("The precise parameters of the brief, casual, and innocent exception are unsettled. . . . It is quite clear, however, that a voluntary departure under threat of coerced deportation is not a brief, casual, and innocent absence from the United States."); *accord Rivera-Jimenez v. INS*, 214 F.3d 1213, 1218 (10th Cir. 2000); *McColvin v. INS*, 648 F.2d 935, 939 (4th Cir. 1981). But the implication from the clear import of former section 244(b)(2) of the Act is plain—namely, had Congress wanted to achieve a continuation of this doctrine and result, it could readily have done so. I am therefore constrained to conclude that, contrary to the assumption implicit in the regulations applicable to NACARA applicants for cancellation,[10] former section

---

[9] The United States Supreme Court created the "brief, casual, and innocent" test in *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), applicable to determinations whether an alien had made an "entry" under the Act. Some lower courts then began to apply the "brief, casual, and innocent" standard to the suspension of deportation statute. But in *INS v. Phinpathya*, 464 U.S. 183 (1984), the Supreme Court ruled that the *Fleuti* exception was irrelevant to the suspension statute and that *any* departure of an alien from the United States was sufficient to break the requisite continuous physical presence. Congress responded in 1986 by enacting section 244(b)(2) of the Act, 8 U.S.C. § 1254(b)(2) (Supp. IV 1986), expressly making the "brief, casual, and innocent" test applicable in suspension cases. *See* H.R. Rep. No. 99-682(I), § 315(b) (1986), 1986 WL 31950, at *78.

[10] As observed earlier, the regulations that form the linchpin of the majority's holding proceed from the premise that, because of the longstanding nature of the interpretation of continuous physical presence as being broken by a coerced "voluntary" departure, Congress could not have intended so readily to discard that practice. But as demonstrated previously, *see supra* note 9, the doctrine is not of hoary lineage. Moreover, it is somewhat telling that, on the only previous occasion when Congress chose to speak on the question of what constitutes a break

(continued...)

244(b)(2) and the above line of authority that construes it have no relevance to, and ought not (save for the binding nature of the regulations vis à vis the Board) to be employed in this case, because former section 244(b)(2) was extinguished when the IIRIRA took effect.[11]

## V. A SUGGESTED APPROACH

Like its predecessor form of relief, suspension of deportation, the new cancellation of removal remedy is ultimately discretionary. *See, e.g.*, section 240A(b)(1) of the Act ("The Attorney General *may* cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who . . . .") (emphasis added). I contend that Congress meant to have

---

[10] (...continued)

in presence as pertains to suspension of deportation for nonpermanent resident aliens, it did so in a manner that occupied the field. That is, former section 244(b)(2) of the Act formed the *only* standard for determining whether a break in presence existed, in order to establish the requisite years of continuous physical presence as an element of *eligibility* for suspension relief. There is no reason to think that, in enacting section 240A(d)(2) of the Act and allowing former section 244(b)(2) to expire, Congress meant to do other than have the new IIRIRA provision likewise occupy the field (i.e., act as a substitute for section 244(b)(2), not as a supplement to that statute as the regulations reflect and the majority evidently believe) in terms of determining whether a break in presence existed for purposes of establishing continuous physical presence under the new relief known as cancellation of removal (which likewise *substituted* for the former suspension of deportation remedy).

Contrary to the majority opinion, nothing can be read into the title of the IIRIRA break-in-presence provision, i.e., "Treatment of Certain Breaks in Presence." *See* section 240A(d)(2) of the Act. Use of the adjective "certain" does not imply, in context, that other breaks in presence may *interrupt* continuous physical presence, as the majority assert, but only that other breaks in presence, e.g., of shorter length, *exist*.

[11] If the regulations at 8 C.F.R. §§ 240.64(b)(2) and (3) are disregarded, it is an interesting and difficult question, although one of diminishing practical importance, whether former section 244(b)(2) of the Act applies to cases to which, by virtue of the so-called "transitional rules" established in section 309(c)(5) of the IIRIRA, Congress provided that the new break-in-presence provision applies retrospectively. *See Rivera-Jimenez v. INS*, *supra* (which considered the issue without regard to the regulations, of which we may presume the court was unaware). The argument in favor of such application is straightforward: Congress did not expressly repeal section 244(b)(2) when it enacted the IIRIRA, and because repeals by implication are not favored, the old *Fleuti*-derived test should be deemed to survive, along with the new 90/180-day standard for breaks in presence, until the effective date of the IIRIRA. The contrary argument is that to so hold would ascribe to Congress an intent that aliens subject to the retroactive application of the new IIRIRA provision be treated more harshly than aliens subject only to the IIRIRA after its effective date, a result that seems in tension with Congress's intent in the IIRIRA generally to *toughen* the standards by which nonpermanent resident aliens can become eligible for suspension of deportation-type relief through the new, harder to establish cancellation of removal requirements. Moreover, the argument runs, the usual presumption against repeals by implication applies with lesser force in this context, because the question is not *whether* Congress intended to eliminate section 244(b)(2), but only *when*.

Immigration Judges and the Board, as the delegated instruments for exercising the Attorney General's discretion, *see, e.g.*, 8 C.F.R. §§ 3.1(a), (g), 3.10 (2001), determine whether departures of an alien from the United States that do not constitute a break in presence by virtue of their length alone, as provided in section 240A(d)(2), should nonetheless disqualify the alien from cancellation relief as a matter of discretion.[12]    *See Rivera-Jimenez v. INS*, *supra*, at 1218 (describing as "irrelevant" an alien's "voluntary" departure of less than 90 days under threat of deportation, because of the applicability of the 90/180-day break-in-presence statute to suspension claims governed by the transitional rules).[13]  Before adumbrating the advantages of this approach as compared to the majority's interpretation,[14] it is appropriate briefly to address the counterargument that, under this approach, even an alien who departed *under an order of deportation* would be eligible for cancellation relief and that this cannot be what Congress intended.  I agree that Congress could not have intended the result that an alien retains eligibility for cancellation relief despite such a departure.

Congress effectively dealt with this circumstance, I submit, in section 241(a)(5) of the Act, discussed earlier, by providing, in more general terms, that an alien who "has reentered the United States illegally after having been removed or having departed voluntarily, *under an order of removal*, . . . may not apply for *any* relief under this Act."  Section 241(a)(5) of the Act (emphasis added).  Thus, although a departure under an order of removal would not technically constitute a break in presence under my suggested

---

[12]  As the majority opinion observes, no legislative history attends the elimination of former section 244(b)(2) of the Act, so Congress's reasons for taking this action can only be the subject of conjecture.  Nonetheless, it is not hard to discern the possible reasons.  The courts of appeals generally reached widely divergent results in applying the old "brief, casual, and innocent" test (even though, as earlier noted, not with respect to the effect of a coerced "voluntary" departure).  *See, e.g.*, *Jubilado v. INS*, 819 F.2d 210 (9th Cir. 1987) (holding that a departure of more than 90 days in order to bring family to the United States was not an entry); *Munoz-Casarez v. INS*, 511 F.2d 947 (9th Cir. 1975) (holding that a 30-day departure to visit family constituted an entry).  The substitution of a simple, objective standard based on length of departure alone, in order to determine whether a departure interrupted an alien's continuous presence, may well have been thought an improvement that would bring greater certainty and consistency in application to this aspect of immigration law.

[13]  The court went on, however, in somewhat schizophrenic fashion, to remand the case to the Board for its interpretation in the first instance of section 240A(d)(2) of the Act as applied to a less than 90-day "voluntary" departure of the type at issue in this case.  *Rivera-Jimenez v. INS*, *supra*, at 1218.  Hence, while suggesting its disagreement with the majority approach, *Rivera-Jimenez* is not squarely at odds with it.

[14]  Of course, whether deemed more advantageous or not, I believe the earlier discussion demonstrates that this approach is more consistent with the underlying Act than is the majority's.

approach, it would nevertheless operate, in the vast majority of instances, to bar the alien altogether from cancellation relief.[15]

Finally, let me briefly outline the advantages of a discretionary approach over the one mandated by the regulations, as a further indication of the former's consistency with likely congressional intent. The majority's regulation-decreed approach of precluding eligibility for cancellation relief based on a coerced departure under threat of removal proceedings is unduly rigid and will occasionally lead, even in that most appealing context, to undesirable outcomes. Although I concur in the result in this case because I would apply a strong presumption against a discretionary grant of cancellation of removal relief to an alien who departed under circumstances that met the description in 8 C.F.R. § 240.64(b)(3) (i.e., an alien who, as here, "voluntarily departed under the threat of deportation," or who departed "for purposes of committing an unlawful act"), there may be exceptional cases in which the presumption should be deemed overcome in order to reach a just result.

For example, suppose a case in which the alien's removal would not only amount to an "exceptional and extremely unusual hardship" to a qualifying relative, but would also be unconscionable and would leave a United States citizen utterly devastated and without resources. Or suppose a case in which the alien not only demonstrated "good moral character" during the prescribed period but demonstrated extraordinary positive character, such as being a national role model through literary, scientific, philosophical, or sports accomplishments and activities, or one who devoted his or her life to charitable or religious works in this country, with significant beneficial results. In such rare, but not unimaginable, circumstances, the majority's approach would nonetheless require that the alien, because of once having departed this country under the threat of institution of removal proceedings, be found to have broken continuous presence and, consequently (often), to be ineligible for cancellation relief.

The more flexible approach that I believe Congress intended would allow for an affirmative exercise of discretion in such instances.[16] Moreover, and

---

[15] Aliens who did not reenter the United States after such a departure would remain eligible for cancellation relief (because, in contrast to the former suspension of deportation remedy, cancellation of removal applies also to aliens who are excludable), as would aliens who, in rare instances, managed to reenter legally, as in the hypothetical example in the majority opinion. Although Congress may or may not have realized this fact when it crafted section 240A(d)(2) of the Act and (in my view) vitiated the previous applicability of cases finding a break in presence based on coerced departures of less than 90 days, the number of such cases is not so large as to render it implausible that Congress meant (or would have meant) that this class of aliens, too, must be dealt with by Immigration Judges and the Board on a discretionary basis.

[16] The discretionary approach I advocate for departures of less than 90/180 days under

(continued...)

far more importantly in a practical sense, there may well be less-than-90-day departures that, although not "casual" or "innocent" under prior interpretations of section 244(b)(2) of the Act, are nevertheless not as seriously interruptive of continuous presence or do not detract as much from an alien's worthiness for relief as the two forms of noninnocent departure addressed in 8 C.F.R. § 240.64(b)(3). Such departures may be ones toward which Congress felt that the Immigration Judges and the Board, in the exercise of discretion, should accord more latitude in determining whether to treat such departures alone as a basis for denying cancellation relief. Yet, under the regulations, these departures, too, must result in a determination that the alien's continuous physical presence has been broken, which often will lead to a finding of *ineligibility* for cancellation relief.[17]

## VI. CONCLUSION

Because the regulations at 8 C.F.R. §§ 240.64(b)(2) and (3) command adherence by the Board, *see supra* notes 1, 4, I join the result that the majority reaches and reiterate only that, on the alternative approach that I believe better captures Congress's likely intent, I would also reach that result in this case. However, the regulations appear at odds with legislative purpose in failing to assign the natural meaning or effect to Congress's failure to bring forward former section 244(b)(2) of the Act as it relates to departures of less than 90 days, and in treating that statute as never having been eliminated with respect to its requirement that such departures be "casual" and "innocent" for purposes of continuous presence eligibility for cancellation of removal. I therefore respectfully encourage a renewed review of the pertinent regulations.

---

[16] (...continued)

section 240A(d)(2) of the Act also would have the effect of insulating these discretionary decisions from federal appellate review under section 242(a)(2)(B) of the Act, 8 U.S.C. § 1252(a)(2)(B) (2000). Whether this is an advantage or not may depend on one's perspective, but I submit that it is generally consistent with Congress's intent to expedite the resolution of cancellation-type claims. The courts of appeals have honored this intent by, for example, finding that the determination of "extreme hardship" under the former suspension of deportation provision is not subject to judicial review. *See*, *e.g.*, *Najjar v. Ashcroft*, 257 F.3d 1262, 1298 (11th Cir. 2001), and cases cited therein. The analysis in those cases would seem to indicate that the same result will be found to hold true for the determination whether "exceptional and extremely unusual hardship" exists under the new cancellation of removal statute.

[17] Ineligibility does not follow automatically upon a finding of a break in presence, since it is possible for an alien to accrue the necessary continuous physical presence anew after the break. *See Ram v. INS*, 243 F.3d 510, 517-18 (9th Cir. 2001); *Vargas-Gonzalez v. INS*, 647 F.2d 457 (5th Cir. 1981).

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member, in which Cecelia M. Espenoza, Board Member, joined

I respectfully dissent.

The resolution of this case brings to mind the story of the emperor who walked naked through the streets of his kingdom while his aides encouraged the citizenry to applaud his supposedly fine, new clothes. The majority insists that there is both statutory and regulatory authority that supports its conclusion that the respondent's departure interrupted his accrual of continuous physical presence necessary to qualify for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2000). Yet not one of the authorities cited by the majority applies specifically to the respondent's circumstances or the particular statute that governs them. Indeed, much of the authority invoked by the majority actually compels an interpretation that would lead to a contrary result.

Like the king's new clothes, the statutory and regulatory authority needed to support the conclusion that the nature of the respondent's departure created a break in the required period of physical presence simply does not exist. As such, the result reached by the majority, that the respondent is ineligible for cancellation of removal, is dependent on an elaborate bootstrapping exercise. The applicable authority supports a contrary conclusion.

## I. STATUTORY AUTHORITY AND CONGRESSIONAL SILENCE

Congress specifically addressed the circumstances under which a respondent's period of continuous residence or continuous physical presence "[f]or purposes of [section 240A of the Act]" shall be deemed to end. Section 240A(d)(1) of the Act. Section 240A(d)(2) of the Act provides specifically that "[a]n alien shall be considered to have failed to maintain continuous physical presence in the United States *under subsections (b)(1) and (b)(2)* if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." (Emphasis added.)

Although the majority contends that this cannot be the "exclusive measure" of what amounts to a break in continuous physical presence, *Matter of Romalez*, 23 I&N Dec. 423, 424 (BIA 2002), Congress simply did not provide additional grounds on which a break in continuous physical presence would exist. Indeed, the statutory language states quite clearly that the provision relating to permitted temporary absences relates to "continuous physical presence . . . under subsections (b)(1) and (b)(2)." Section 240A(d)(1) of the Act. The language could not be more plain: these subsections relate to cancellation of removal and adjustment of status for

certain nonpermanent residents, including a spouse or child who has been battered or subjected to extreme cruelty by a spouse or parent.  Sections 240(A)(b)(1), (2) of the Act.

Thus, although the majority claims to "start with the language of the statute itself," it does not do so.  *Matter of Romalez*, *supra*, at 425.  The literal language does not address breaks in presence other than those determined by length of time, individually or in the aggregate.  *See* section 240A(d)(2) of the Act.

In *Matter of Salazar*, 23 I&N Dec. 223, 227 (BIA 2002), we emphasized that we would not "carve out an exception" to the operation of a statutory provision when, "under the plain language of section 101(a)(48)(A) of the Act, we have no authority to make such an exception."  In the face of congressional silence, we reasoned that "[s]ection 101(a)(48)(A) of the Act clearly states the requirements for a conviction . . . [and] contains no exception for offenders who have been accorded rehabilitative treatment under state law."  *Id.* at 229.  We had no hesitation in concluding that "[n]othing in either [the Act or the federal first offender statute] indicates that Congress intended to excuse a first-time simple drug possession offender . . . from the definition of a conviction that it set forth in section 101(a)(48)(A)."  *Id.*

In other words, we insisted that in construing section 101(a)(48)(A) of the Act, we could only accommodate circumstances that were explicitly articulated by Congress and included in the statute as a matter of its plain language.  If the respondent's circumstances were not among those expressly addressed in the statutory language, they were not affected by its operation.  *Id.* (stating that "we are not at liberty to create exceptions where Congress has declined to provide them"); *see also Matter of Collado*, 21 I&N Dec. 1061, 1064 (BIA 1998) (ruling that the plain language of section 101(a)(13) of the Act compelled the finding that the provision was limited to its express terms).

Yet here, in the face of congressional silence in relation to sections 240A(d)(1) and (2) of the Act, the majority insists that where the statute expressly covers breaks in presence of a certain length, this specificity does not mean that Congress intended to foreclose other breaks in presence from posing disruptions in continuous presence of a disqualifying nature.  In the majority's view, Congress did not need to articulate any specific exceptions.  The statutory language does not support such a reading, and it is inconsistent with our practice to the contrary in construing other provisions of the Act.

The majority attempts to justify its expanded reading by asserting that the statute as a whole "does not support" the respondent's contention that section 240A(d)(2) of the Act preserves an alien's eligibility for cancellation of removal for any departure of 90 days or less, because a removal order is intended to terminate a period of residence in the United States.  *Matter of Romalez*, *supra*, at 426 (citation omitted).  I must reject the majority's

explanation of its attempted justification as, first, being inapposite to the issue with which we are confronted and, second, constituting an unacceptable excuse for venturing into the legislative arena when we have no authority to do so.

First, the circumstances of the respondent's case involve a removal order. The particular provisions of the statute pertaining to cancellation of removal no longer distinguish between those aliens who have effected an unlawful entry into the United States and those who are apprehended upon arrival. *See* section 240A(a) of the Act; *cf.* sections 244(a)(1), (2) of the Act, 8 U.S.C. § 1254(a)(1), (2) (1994) (making suspension of deportation available to aliens in deportation proceedings, but not to those who had not made an "entry"). Under the prior statute, Congress had allowed only those aliens who had effected an unlawful entry to apply for suspension of deportation in deportation proceedings; those in exclusion proceedings were not eligible. *See Ramirez-Durazo v. INS*, 794 F.2d 491, 496-97 & n.2 (9th Cir. 1986) ("An alien in deportation proceedings is entitled to certain procedural protections and substantive rights not available in an exclusion proceeding . . . [including the right to] seek suspension of deportation" (citing *Landon v. Plasencia*, 459 U.S. 21, 25-26 (1982))); *Matter of Ching*, 12 I&N Dec. 710, 711-12 (BIA 1968) (finding that suspension of deportation eligibility requires a charge and finding of deportability on that ground). In contrast, under the current unitary removal proceedings, cancellation of removal under section 240A(a) of the Act is available to any otherwise qualified alien.

Accordingly, the fact that an alien departs and reenters the United States does not depend on a fiction that the departure was not meaningful because it was "brief, casual, and innocent." *Cf. Rosenberg v. Fleuti*, 374 U.S. 449 (1963); former section 244(b) of the Act. Eligibility for cancellation of removal after any type of departure other than that enforced pursuant to a removal order turns on whether the respondent's absence exceeded the time periods allowed in the statute. *See* sections 240A, 241(a)(5) of the Act, 8 U.S.C. §§ 1229b, 1231(a)(5) (2000).

I agree with the portion of Board Member Pauley's opinion in which he rejects the majority's reliance on section 241(a)(5) of the Act as providing support for the majority's analysis. As Board Member Pauley points out, section 241(a)(5) applies to the enforced removal of a respondent following a full hearing before an Immigration Judge. In section 241(a)(5) of the Act, Congress expressly foreclosed eligibility for relief when a respondent departs the country under an order of removal and then unlawfully reenters the United States. This is not such a case. Section 241(a)(5) of the Act is not applicable to voluntary departures made prior to the institution of formal removal proceedings, even if such departures are made by a respondent who would otherwise face a removal proceeding.

In an effort to invoke section 241(a)(5) as authority for its ruling, the majority contorts the content of that statutory provision, almost beyond recognition. The majority ignores the requirement that an alien have returned "illegally" after having been "removed or having departed voluntarily, *under an order of removal*" in order to be ineligible for any relief. Section 241(a)(5) of the Act (emphasis added). The majority's analysis essentially renders irrelevant the due process requirement that no enforced departure is lawful without a full and fair hearing in which a respondent is entitled to an opportunity to be heard, to present evidence, to challenge evidence and cross-examine witnesses against him, and to apply for forms of relief from removal for which he may be eligible. *See* sections 240(a)(3), (b) of the Act, 8 U.S.C. §§ 1229(a)(3), (b) (2000). In equating a so-called "coerced departure" with a voluntary departure, deportation, or removal following a full and fair hearing, the majority unacceptably conflates these procedures and their legal effect.

Second, the majority admits that "[w]e have uncovered nothing in the legislative history . . . that substantially helps to resolve this case." *Matter of Romalez*, *supra*, at 429. Under such circumstances, the proper course is to apply the removal provisions of the Act narrowly. *INS v. St. Cyr*, 533 U.S. 289, 320 (2001) (recognizing "'the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien'" (quoting *INS v. Cardoza-Fonseca,* 480 U.S. 421, 449 (1987))); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948) (holding that "we will not assume that Congress meant to trench on [the immigrant's] freedom beyond that which is required by the *narrowest of several possible meanings of the words used*" (emphasis added)). Thus, we are obliged to opt for the more narrow reading, i.e., the one that will result in less harsh removal consequences.

## II. LACK OF REGULATORY AUTHORITY

There is no regulation that specifically addresses whether the respondent's required physical presence of 10 years is interrupted by his two departures of far less than 90 days each, simply because these departures occurred after the respondent was apprehended by the Immigration and Naturalization Service. There certainly is no regulation dictating that such a "departure under threat" constitutes a break in the period of physical presence required under the governing statute and disqualifies the respondent from cancellation of removal.

As the majority acknowledges in summarizing the pertinent facts in the respondent's case, the respondent is a native and citizen of Mexico. He is not eligible for consideration for either suspension or cancellation of removal under the Act, as amended by section 203 of the Nicaraguan Adjustment and

Central American Relief Act, Pub. L. No. 105-100, tit. II, 111 Stat. 2193, 2198 (1997), *amended by* Pub. L. No. 105-139, 111 Stat. 2644 (1997) ("NACARA"). Consequently, the regulations implementing the provisions of the NACARA do not apply to him.[1]

The majority and the concurring opinions skip right over this marked difference between the authority governing the cases of applicants under the NACARA provisions and that governing the cancellation of removal applications of applicants such as the respondent. The majority acknowledges that NACARA applicants are exempt from many of the limitations imposed on non-NACARA applicants. *See Matter of Romalez*, *supra*, at 427. Moreover, the majority concedes that the "regulation specifically applies only in the context of NACARA applications." *Id.* at 428 (referring to 8 C.F.R. § 240.64(b)(3) (2001)). Nevertheless, the majority insists that the case of a non-NACARA applicant, such as the respondent, is somehow governed by the terms of the regulations pertaining to NACARA applicants with respect to departures under threat of deportation. *See* 8 C.F.R. § 240.64(b)(3).

Calling a regulation that implements a different statutory provision limited to individuals of certain nationalities and specific conditions "related" does not make it applicable to the respondent. *Matter of Romalez, supra*, at 427. We have held that the language of a regulation is to be construed according to the same principles of interpretation that we apply in determining the meaning of a statutory provision. *Matter of Masri*, Interim Decision 3419 (BIA 2000) (citing *Diaz v. INS*, 648 F. Supp. 638, 644 (E.D. Cal. 1986) (citing *Malat v. Riddell*, 383 U.S. 569, 571 (1966))). According to the canons of statutory construction, when language is included in one section of a provision and omitted in another section, the disparate inclusion or exclusion is presumed to be intentional. *INS v. Cardoza-Fonseca*, *supra*, at 432 (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) (citing *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir.1972))).

There is no regulation comparable to 8 C.F.R. § 240.64(b) that implements section 240(d)(2) of the Act and applies to an applicant for regular cancellation of removal. *See* 8 C.F.R. § 240.20 (2001). As such, contrary

---

[1] The Attorney General plainly differentiated the regulations governing "special rule" suspension of deportation and cancellation of removal from other cancellation of removal adjudications, categorizing these forms of relief under "Subpart H" of 8 C.F.R. pt. 240 (2001). In promulgating 8 C.F.R. § 240.64, the Attorney General pointed to programmatic concerns and explained that because "specific departures . . . have long been considered to break continuous physical presence in the context of suspension of deportation adjudications," the burden of proof remains on the applicant to establish the "casual and innocent" nature of such departures. Suspension of Deportation and Special Rule Cancellation of Removal for Certain Nationals of Guatemala, El Salvador, and Former Soviet Bloc Countries, 64 Fed. Reg. 27,856, 27,863 (1999). The Attorney General concluded that it was, "therefore, both reasonable and necessary to place the same restrictions on special rule cancellation applicants." *Id.*

to the suggestion in the concurring opinion, we are not bound by a regulation having the force and effect of law. *Cf. Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989); *see also Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992). In fact, the statutory and regulatory provisions governing the applications submitted by NACARA applicants are specifically designed to guide the determination of claims made by applicants described in the NACARA amendments to the statute. A non-NACARA applicant cannot benefit from such provisions and there is no basis to extend the terms of the regulation implementing the NACARA statute to all cancellation of removal applicants. Even if it were reasonable to speculate that the Attorney General might wish to extend 8 C.F.R. § 240.64(b) to a non-NACARA applicant who is seeking cancellation of removal, he did not do so. In the absence of any regulation, we exceed our authority if we proceed to read a provision that simply seems "related" into the regulations applicable to the respondent.

### III.  PRIOR DECISIONS AND THE BRIEF, CASUAL, AND INNOCENT STANDARD

The prior decisions addressing the "brief, casual, and innocent" departure standard, which followed the interpretation of the United States Supreme Court in *Rosenberg v. Fleuti*, *supra*, do not apply to the issue before us in this case. Although the majority cites *Hernandez-Luis v. INS*, 869 F.2d 496, 498 (9th Cir. 1989), in which the respondent accepted prehearing administrative departure and then returned and entered the United States without inspection, that case was not determined under the current statute or even its predecessor provision.[2] *See also Barragan-Sanchez v. Rosenberg*, 471 F.2d 758, 760 (9th Cir. 1972) (finding that a voluntary departure under threat of deportation was not a brief, casual, and innocent absence from the United States).

The advent of the IIRIRA completely altered the predecessor "suspension of deportation" provisions on which those decisions were based. *See* sections 244(a)(1), (2) of the Act. In effect, the brief, casual, and innocent test was codified at various places in the new statute. *See, e.g.*, section 101(a)(13)(C)(ii) of the Act, 8 U.S.C. § 1101(a)(13)(C)(ii) (2000); section 240A(d) of the Act; *see also Matter of Collado*, *supra*, at 1064-65; *cf. Castrejon-Garcia v. INS*, 60 F.3d 1359, 1362 (9th Cir. 1995) (stating that an "'alien shall not be considered to have failed to maintain continuous physical presence in the United States . . . if the absence from the United States was

---

[2]  In *Castrejon-Garcia v. INS*, 60 F.3d 1359 (9th Cir. 1995), the United States Court of Appeals for the Ninth Circuit recognized that Congress passed 8 U.S.C. § 1254(b) (1994) in order to overrule the Supreme Court's ruling in *INS v. Phinpathya*, 464 U.S. 183 (1984), that any absence precluded relief. *Id.* at 1362 (citing H.R. Rep. No. 99-682, pt. 1, at 78 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649, 5682).

brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence'" (quoting 8 U.S.C. § 1254(b)(2))).

In *Matter of Collado*, *supra*, the Board concluded that the brief, casual, and innocent standard originating in the *Fleuti* decision did not survive the enactment of the IIRIRA, and it declined to read the test into the statute where Congress had not elected to include it. *Id.* at 1065 (stating that "Congress has now amended the law to expressly preserve some, but not all, of the *Fleuti* doctrine"). Therefore, those portions of the "*Fleuti*" test that Congress did not include in the post-1996 statutory provisions are no longer relevant, and the parameters of the test are not decisive. *Hernandez-Luis v. INS*, *supra*, at 498 (citing *DeGurules v. INS*, 833 F.2d 861 (9th Cir.1987)). Accordingly, the "noncasual" or "noninnocent" basis on which the petitioner in *Hernandez-Luis* may have accepted voluntary departure no longer exists as a factor in determining whether a respondent is eligible to apply for cancellation of removal. Rather, the terms of the statute control.

At the same time, the Ninth Circuit, in which this cases arises, has long recognized that both the section of the statute governing entry and the section relating to suspension of deportation were essentially remedial in nature. *Kamheangpatiyooth v. INS*, 597 F.2d 1253, 1256 (9th Cir. 1979). The physical presence requirement has consistently been seen as effectuating Congress's judgment that presence of a specified length was "likely to give rise to a sufficient commitment to this society through establishment of roots and development of plans and expectations for the future to justify an examination by the Attorney General of the circumstances of the particular case to determine whether deportation would be unduly harsh." *Id.* at 1256; *see also Heitland v. INS*, 551 F.2d 495, 501 (2d Cir. 1977).

In *Castrejon-Garcia v. INS*, *supra*, at 1362, an Immigration Judge found that the petitioner had not met the continuous physical presence requirement because he went to Mexico for 8 days for the sole purpose of obtaining a visa. However, in the 10-year period preceding the point at which he applied for suspension of deportation, Castrejon departed and reentered unlawfully in 1983, departed and reentered unlawfully in 1988, and was actually convicted of unlawful entry in 1988.[3] Despite this record, the Ninth Circuit rejected the Board's reading of the "casual" element of the *Fleuti* test, concluding that

> [t]he case is characterized by the remarkable determination of the Service and the Board to rid this country of a resident of twenty-five years standing . . . . Discretion, which is a normal requirement for the fair execution of every governmental duty, has been conspicuously in abeyance in a pursuit worthy of Inspector Javert.

---

[3] Because of a prior conviction for transporting, Castrejon had to establish 10 years of continuous physical presence and good moral character to qualify for suspension of deportation. *Castrejon-Garcia v. INS*, *supra*.

*Id.* at 1363.

I do not contend that the respondent's purpose in departing the country is the same as that of Castrejon, who was attempting to obtain an immigrant visa. However, the respondent's unlawful reentries are no more unlawful, and are fewer and less frequent, than those of Castrejon. Moreover, the Ninth Circuit emphasized that the "evident statutory purpose" is that an individual who lives continuously in the United States for 7 years does not destroy his eligibility by "actions that do not affect his commitment to living in this country." *Id.* at 1362.

The respondent has lived in the United States for 18 years, working and raising his family in this country. He has seven children, who are now 4 to 15 years of age. I would find that his stake in this country is considerable, and that the hardship to these children, which is the ultimate issue, is not merely economic but educational, societal, cultural, and personal. If it is appropriate to invoke prior decisions, notwithstanding the demise of the "brief, casual, and innocent" test and Congress's explicit codification in the IIRIRA of those portions of the standard Congress wished to preserve, then, at least, the respondent's statutory eligibility must be judged by the Ninth Circuit's more recent decision evaluating not solely the casual or innocent nature of the departure, but the quality of the respondent's ties and commitment to living in this country.

## IV. CONCLUSION

For the reasons discussed above, the respondent has established continuous physical presence according to the terms of the statute. The interpretation imposed by the majority is clothed in supposition and lacks support in the statute or the regulations. The Immigration Judge decided the respondent's case without the benefit of our decisions in *Matter of Monreal*, 23 I&N Dec. 56 (BIA 2001), and *Matter of Andazola*, 23 I&N Dec. 319 (BIA 2002). Before simply affirming the Immigration Judge's decision, I would remand this case to allow all concerned parties the opportunity to address the substantive issues under the law as currently interpreted by the Board.