**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO JUAREZ-RAMOS,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

Nos. 05-72472
        05-75364

Agency No.
A76-665-125

OPINION

On Petitions for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 5, 2007—Pasadena, California

Filed May 8, 2007

Before: Thomas G. Nelson, Susan P. Graber, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge T.G. Nelson

5359

## COUNSEL

Leah W. Hurwitz, San Diego, California, for the petitioner.

Erica B. Miles, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

T.G. NELSON, Circuit Judge:

### I

The Board of Immigration Appeals (BIA) and an immigration judge (IJ) held that an expedited removal order in 1999 interrupted Francisco Juarez-Ramos's physical presence in the United States. Thus, they held that Juarez-Ramos could not establish the required ten years of physical presence necessary to be eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1). In his petition for review, Juarez-Ramos argues that an expedited removal order should not interrupt an alien's continuous physical presence because so little process is involved in issuing such orders. We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(B)[1] and hold that an expedited removal order does interrupt continuous physical presence. Thus, we deny the petition.

### II

Juarez-Ramos is a native and citizen of Mexico. He was found in this country and placed in removal proceedings on January 27, 2003. Asserting that he had been continuously physically present in the United States for ten years, having arrived in early January 1993, he sought cancellation of removal. The IJ concluded that such relief was unavailable to Juarez-Ramos because two events interrupted the ten-year period: a voluntary departure in 1994 and an expedited removal in 1999. Relying especially on the expedited removal in 1999, the BIA affirmed the IJ's decision and denied Juarez-Ramos's petition to reopen.

---

[1]We "may consider the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility to be considered for [cancellation of removal] relief." *Tapia v. Gonzales,* 430 F.3d 997, 999 (9th Cir. 2005).

Juarez-Ramos contested the asserted voluntary departure in 1994. However, he admitted that he had been removed pursuant to an expedited removal order in 1999 when he sought to reenter the United States after a brief trip to Mexico. Because we conclude that expedited removal orders interrupt continuous physical presence, we deny his petition for review. And because the 1999 order alone defeats the petition, we need not reach Juarez-Ramos's challenge to the government's evidence regarding the alleged 1994 voluntary departure.

### III

[1] Since 1948, the Attorney General has had the discretion to suspend the deportation, or cancel the removal,[2] of an alien who has been continuously, though illegally, present in the United States for ten years.[3] To establish a decade of continuous physical presence in the United States, a deportable alien must avoid detection. Placement in formal removal proceedings automatically interrupts continuous physical presence.[4] Similarly, the voluntary departure of an alien in lieu of formal proceedings interrupts the accrual of time.[5] Brief, voluntary trips outside the United States, however, do not — in and of themselves — interrupt an alien's continuous presence for the purpose of the statute.[6] Such trips create the opportunity for detection when the alien attempts to reenter, however.

---

[2]The term "cancellation of removal" has replaced the term "suspension of deportation." *See Alcaraz v. INS*, 384 F.3d 1150, 1152-53 (9th Cir. 2004).

[3]*See Tapia*, 430 F.3d at 1000-01 (reviewing history of continuous physical presence requirement). Other requirements also apply. *See* 8 U.S.C. § 1229b(b)(1). However, they are not relevant in this case.

[4]8 U.S.C. § 1229b(d)(1); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 617 & n.1 (9th Cir. 2006) (describing history of provision).

[5]*See Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 974 (9th Cir. 2003) (per curiam).

[6]*Tapia*, 430 F.3d at 1000-01; 8 U.S.C. § 1229b(d)(2)

If detection upon reentry occurs and the alien is not allowed to reenter — that is, officials simply turn the alien around at the border — this court has held that no interruption of continuous physical presence occurs as long as the alien eventually makes it back into this country.[7] This is true even if several turnarounds occur.[8] Moreover, it remains true even when border officials go to the trouble of documenting the turnarounds.[9]

[2] This case presents the question whether a slightly more formal procedure at the border — an expedited removal — does interrupt continuous physical presence. We conclude that it does because, in at least one important way, expedited and formal removals are similar. Both carry with them an explicit statutory bar to readmission for a period of five years.[10] This statutory bar reflects a congressional intent to sever an alien's ties to this country.[11]

[3] Congress created a similar bar to readmission for aliens who had voluntarily departed.[12] We relied on that bar when we distinguished a grant of voluntary departure from a simple turnaround at the border.[13] Allowing an alien who had voluntarily departed and returned, despite the bar, to continue to accrue continuous presence for the cancellation of removal

---

[7]*Tapia*, 430 F.3d at 998, 1003.

[8]*Id.*

[9]*Id.* at 1003-04 (holding that the existence of computer records listing "information about the rejections" at the border and containing the alien's fingerprints and photograph did not suffice to interrupt an alien's continuous physical presence).

[10]8 U.S.C. § 1182(a)(9)(A) (providing a five-year bar to readmission for aliens removed after both expedited and formal proceedings).

[11]*See Vasquez-Lopez*, 343 F.3d at 972; *Tapia*, 430 F.3d at 1002.

[12]8 U.S.C. § 1182(a)(9)(B).

[13]*See Tapia*, 430 F.3d at 1002; *see also Vasquez-Lopez*, 343 F.3d at 972 (noting that the BIA properly held that, much like formal removals, voluntary departures "sever[ ] the alien's physical tie to the United States").

statute would, we concluded, "thwart Congress's clear intent that such an alien be inadmissible for years following the date of his departure."[14] Thus, voluntary departures interrupt continuous physical presence.

[4] The reasoning we used with respect to voluntary departures applies to this situation involving expedited removals. If we were to allow aliens to continue to accrue physical presence after being subject to expedited removal orders, we would thwart Congress's intent — clearly expressed by statute — that such aliens be barred from the country for five years.[15] Accordingly, we hold that an expedited removal order interrupts an alien's continuous physical presence in this country for the purpose of cancellation of removal relief.

We acknowledge that many differences between expedited and formal removals exist.[16] In addition, many similarities between the expedited removal process and simple turnarounds at the border exist.[17] Those factors do not outweigh,

---

[14]*Tapia*, 430 F.3d at 1002.

[15]8 U.S.C. § 1182(a)(9)(A).

[16]Aliens are afforded very little process in expedited removals, in contrast to formal removal proceedings. *Compare* 8 U.S.C. § 1229a (setting forth procedures for formal removal proceedings before an immigration judge) *with id.* § 1225(b)(1) (setting forth procedures for expedited removal proceedings before an immigration officer). In addition, the right to appeal expedited removals is extremely limited. *See* 8 U.S.C. § 1225(b)(1)(C) (providing that an expedited removal order "is not subject to administrative appeal" except when an alien claims a fear of persecution or claims that he or she has been granted status as a permanent resident, asylee, or refugee).

[17]In an expedited removal, an immigration official must make a determination of inadmissibility, create a record, ask the alien if he or she fears persecution, and sign an order of removal. *See* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(2). In both an expedited removal and a simple turnaround, however, it is an immigration official — not an IJ — who determines inadmissibility and the alien has no right to a hearing. *Id.* In addition, subject to the limitations set forth in note 16 above, the alien has no right to further hearing or review. *See* 8 U.S.C. § 1225(b)(1)(A)(I); 8 C.F.R. § 235.3(b)(2).

however, the fact that Congress clearly intended formal and expedited removals — but not mere turnarounds[18] — to sever an alien's ties with this country.

Our decision comports with previous decisions in which we, and the BIA, assumed that expedited removal orders interrupt continuous physical presence.[19] However, it arguably contradicts — or at least limits — dicta in *Tapia*. The *Tapia* court stated, for example, that if it were to hold that being turned around at the border "interrupted an alien's physical presence, [it] would arbitrarily reward those returning aliens who were particularly adept or lucky in their ability to cross the border without getting stopped."[20] Extending that logic, our decision today might be seen as "arbitrarily reward[ing]" those aliens lucky enough to have a border official turn them around without placing them in the expedited removal process.[21] We can respond to such anticipated criticism only by noting that a line must be drawn somewhere. It is within Congress's discretion to draw the line between denials of reentry that are memorialized and executed pursuant to an expedited removal order and those that are not. And that is what we conclude Congress has done. Accordingly, we hold that an expedited removal order interrupts an alien's continuous physical presence in this country for purposes of cancellation of removal relief.

PETITION DENIED.

---

[18]*See Tapia*, 430 F.3d at 1002.

[19]*Id.* at 1003-04 (stating that an alien subject to a removal order — either formal or expedited — would experience an interruption in continuous physical presence); *In re Guadalupe Avilez-Nava*, 23 I. & N. Dec. 799, 800-01 (B.I.A. 2005) (en banc) (same).

[20]*Tapia*, 430 F.3d at 1003.

[21]*Id.*