**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-2259**

BALTAZAR OLEA GARCIA,

              Petitioner,

          v.

ERIC H. HOLDER, JR., Attorney General,

              Respondent.

On Petition for Review of an Order of the Board of Immigration
Appeals.

Argued:  September 18, 2013        Decided:  October 16, 2013

Before WILKINSON, MOTZ, and FLOYD, Circuit Judges.

Petition for review denied by published opinion.  Judge Motz
wrote the opinion, in which Judge Wilkinson and Judge Floyd
joined.

**ARGUED**:  Jeremy Layne McKinney, MCKINNEY PERRY & COALTER,
Greensboro, North Carolina, for Petitioner.  Brendan Paul Hogan,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent.  **ON BRIEF**:  Stuart F. Delery, Principal Deputy
Assistant Attorney General, Cindy S. Ferrier, Assistant
Director, Office of Immigration Litigation, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

DIANA GRIBBON MOTZ, Circuit Judge:

In this appeal, Baltazar Olea Garcia challenges an order of the Board of Immigration Appeals ("BIA") denying his application for cancellation of removal on the ground that he failed to meet the "continuous physical presence" requirement of 8 U.S.C. § 1229b.  We deny Garcia's petition for review.

I.

In 1995, Garcia, a native and citizen of Mexico, entered the United States illegally.  In 2001, he left this country to attend his father's funeral.  When Garcia returned to the United States a week later, Immigration and Naturalization Service ("INS") officers detained him at the border and took his fingerprints and photograph.  According to Garcia, INS officers offered him the opportunity to appear before an immigration judge, but he declined, opting to return to Mexico voluntarily.  Several days later, he reentered the United States undetected.

In 2009, the Department of Homeland Security ("DHS") initiated removal proceedings against Garcia.  He conceded his removability, but filed an application for cancellation of removal.

At a 2011 hearing on the merits of his application, Garcia testified about his 2001 apprehension at the United States-Mexico border.  He remembered being stopped by INS officers,

2

whom he believed informed him of his right to appear before an immigration judge. Garcia testified that "[t]hey told me that . . . I could sign [a] voluntary departure deportation paper, or if I wanted to, I . . . could have a lawyer to . . . see the [immigration] [j]udge." AR 109. Unable to afford an attorney, Garcia chose to return to Mexico voluntarily.

The DHS introduced a US-VISIT report[1] indicating that Garcia had been fingerprinted and photographed in connection with the 2001 border stop. The DHS did not offer any departure form signed by Garcia, nor did the US-VISIT report indicate whether Garcia had signed one. Garcia offered no evidence -- testimonial or otherwise -- expressly addressing whether he signed any documentation.

The immigration judge concluded that Garcia was statutorily ineligible for cancellation of removal because he could not show that he continuously resided in the United States for the preceding ten years. Citing the BIA's decision in In re Romalez-Alcaide, 23 I. & N. Dec. 423 (BIA 2002), the judge held

---

[1] The United States Visitor and Immigrant Status Indicator Technology Program ("US-VISIT") is "an integrated, automated entry-exit system that records the arrival and departure of aliens; verifies aliens' identities; and authenticates aliens' travel documents through comparison of biometric identifiers." United States Visitor and Immigrant Status Indicator Technology Program ("US-VISIT"), 69 Fed. Reg. 53,318-01 (Aug. 31, 2004) (to be codified at 8 C.F.R. pts. 215, 235, 252). In 2013, the Office of Biometric Management ("OBIM") replaced US-VISIT.

that an alien's physical presence terminates if he voluntarily departs the country instead of submitting to removal -- at least insofar as his departure occurs pursuant to a "formal, documented process." AR 310 (quoting In re Avilez-Nava, 23 I. & N. Dec. 799, 805 (BIA 2005)). The immigration judge concluded that Garcia's testimony, coupled with the DHS's US-VISIT report, sufficed to show that Garcia had been formally excluded from the United States, ending his continuous presence here.

After the BIA affirmed, Garcia noted a timely appeal.

II.

Removable aliens may petition the Attorney General for cancellation of removal pursuant to 8 U.S.C. § 1229b (2006). To prevail, a petitioner must prove that he has been "physically present in the United States for a continuous period of not less than 10 years" prior to the filing of removal proceedings. Id. § 1229b(b)(1)(A); see also Salem v. Holder, 647 F.3d 111, 116 (4th Cir. 2011) (alien bears burden of proving eligibility for cancellation of removal by preponderance of the evidence). The statute sets forth several circumstances that terminate an alien's continuous presence:

(1) Termination of continuous period

For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when

4

the alien is served a notice to appear under section 1229(a) of this title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title . . . .

(2) Treatment of certain breaks in presence

An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) and (b)(2) of this section if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

8 U.S.C. § 1229b(d).

In addition to the conditions specified in the statute, the BIA has held that an alien's continuous physical presence terminates when he voluntarily departs the United States under threat of removal. Romalez-Alcaide, 23 I. & N. Dec. at 429. The BIA reasoned that it would be incongruous for an alien's physical presence to terminate if he were formally deported, but for his physical presence to continue if he voluntarily departed so as to avoid deportation. Id. at 426-27.

Although an alien's departure under threat of removal renders him ineligible for cancellation of removal, the BIA has clarified that an alien's departure is not disqualifying if INS officers simply turn him away at the border. Avilez-Nava, 23 I. & N. Dec. at 805. In this circumstance, the INS had not "made [the alien] aware of the opportunity for exclusion proceedings," and thus his encounter with immigration officials is too informal to count as a departure under threat of removal. Id.

The BIA further explained in Avilez-Nava that to interrupt "continuous presence" under 8 U.S.C. § 1229b(d), an alien's departure must exhibit some level of formality, documented by some sort of record. Id. at 805-06. Evidence of a formal, documented process includes "testimony or documentary evidence," such as voluntary departure forms, affidavits, or "other appropriate . . . records." Id. at 806.

Garcia poses two arguments on appeal. We consider each in turn.

## III.

Garcia initially contends that the BIA's decision in Romalez-Alcaide conflicts with the unambiguous text of § 1229b. When a litigant contests an agency's interpretation of a statute, "we employ the familiar analysis prescribed by Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)." William v. Gonzales, 499 F.3d 329, 331 (4th Cir. 2007).

Chevron review involves a two-step analysis. First, we must assess whether "the statute is silent or ambiguous with respect to the specific issue" before us. Chevron, 467 U.S. at 843. If so, we must determine whether the agency's construction is reasonable. Id. An agency's reasonable interpretation of a

6

statute will prevail, even if a better construction is possible. Id.

Here, section 1229b is silent as to whether an alien's voluntary departure under threat of removal terminates his "continuous physical presence" in the country. The statute does not define "continuous physical presence," but merely specifies situations in which an alien's continuous presence "shall be deemed to end." 8 U.S.C. § 1229b(d)(1). The statute provides that an alien's continuous presence terminates when removal proceedings commence or when he commits certain kinds of crimes. See id. It further specifies that continuous presence terminates "if the alien [departs] the United States for any period in excess of 90 days or for any period in the aggregate exceeding 180 days." See id. § 1229b(d)(2).

Garcia contends that the latter provision constitutes the entire regulation of aliens' breaks in presence. According to Garcia, if an alien departs the country for fewer than 90 days (or 180 days in aggregate), his "continuous physical presence" has not ended. We disagree. Although § 1229b(d)(2) specifies that certain breaks in presence render an alien ineligible for cancellation of removal, these breaks do not constitute an exhaustive list of every circumstance terminating an alien's continuous physical presence. The statute provides that "continuous physical presence" terminates "if the alien

7

[departs]" for more than ninety days; it does not provide that physical presence terminates if <u>and only if</u> the alien so departs. <u>Id.</u> § 1229b(d)(2).

In light of this statutory silence, the BIA's interpretation is reasonable. That the statute renders departures in excess of ninety days "breaks in presence" does not preclude a regulation making certain absences of shorter duration also "breaks in presence." The BIA's logic in <u>Romalez-Alcaide</u> is sound. Section 1229b(d)(1) terminates an alien's continuous physical presence when the DHS files a removal action against him. Allowing an alien to evade termination by leaving the country voluntarily would create a loophole that would frustrate the statutory framework.

Garcia finds it significant that the BIA's regulation predates the statutory language pursuant to which it was promulgated. He notes that under a prior version of the Immigration and Nationality Act ("INA"), an alien could petition for suspension of deportation if he had been continuously present in the country for seven years -- "brief, casual, and innocent departures" notwithstanding. <u>Id.</u> § 1254 (repealed 1996). Construing the old text, the BIA held that a voluntary departure under threat of deportation was not "brief, casual, and innocent," and thus an alien who so departed was ineligible for statutory relief. <u>See</u> <u>Hernandez-Luis v. INS</u>, 869 F.2d 496,

8

498 (9th Cir. 1989). In 1996, Congress amended the INA, replacing its "brief, casual, and innocent" language with § 1229b(d)(2)'s quantitative standard. Garcia argues that to give effect to this new language, the BIA must be prohibited from promulgating regulations identical to those issued under the predecessor statute.

We disagree. The BIA's decision in <u>Romalez-Alcaide</u> is not inconsistent with a change in the law. By implementing a quantitative standard, Congress cabined the BIA's authority to define which departures by aliens are "brief, casual, and innocent." This shift from a qualitative to a quantitative standard, however, does not evince Congress's intent to eliminate the BIA's discretion altogether. On the contrary, section 1229b(d)(2)'s text entirely accords with the BIA's retention of some discretionary authority.

We note that all of our sister circuits to have considered the question have found the BIA's construction permissible. <u>See</u> <u>Barrera-Quintero v. Holder</u>, 699 F.3d 1239, 1245 (10th Cir. 2012); <u>Vasquez v. Holder</u>, 635 F.3d 563, 570 (1st Cir. 2011); <u>Ascencio-Rodriguez v. Holder</u>, 595 F.3d 105, 112-13 (2d Cir. 2010); <u>Mendez-Reyes v. Attorney Gen.</u>, 428 F.3d 187, 191-92 (3d Cir. 2005); <u>Morales-Morales v. Ashcroft</u>, 384 F.3d 418, 427 (7th Cir. 2004); <u>Palomino v. Ashcroft</u>, 354 F.3d 942, 944-45 (8th Cir. 2004); <u>Mireles-Valdez v. Ashcroft</u>, 349 F.3d 213, 217-18 (5th

9

Cir. 2003); Vasquez-Lopez v. Ashcroft, 343 F.3d 961, 972-73 (9th Cir. 2003) (per curiam).  Like our sister circuits, we uphold the BIA's interpretation of § 1229b.

IV.

Alternatively, Garcia argues that even if Romalez-Alcaide controls, the BIA erred in applying its holding to the facts of his case.  We review BIA decisions regarding an alien's eligibility for cancellation of removal -- including determinations of his "continuous physical presence" -- for substantial evidence.  See Ramos v. Holder, 660 F.3d 200, 203 (4th Cir. 2011).  To reverse, we must find that the evidence before the BIA "was so compelling that no reasonable factfinder could fail to find" eligibility for relief.  INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); Elliott v. Adm'r, Animal & Plant Health Inspection Serv., 990 F.2d 140, 144 (4th Cir. 1993).

As announced in Avilez-Nava, the BIA regards an alien's departure as severing physical presence in the country only when the alien departs pursuant to a "formal, documented process." 23 I. & N. Dec. at 805-06.[2]  In this case, the BIA reasoned that

---

[2] This court has yet to address whether a formal, documented process is necessary to sever an alien's continuous presence in the United States for purposes of cancellation of removal. (Continued)

10

Garcia's testimony, coupled with a US-VISIT report, established that he received a "formal, documented process." AR 3. Garcia claims that this evidence was insufficient to establish his formal documented departure, rendering his return to Mexico ineffective in terminating his continuous physical presence here.

The argument fails. Garcia's own testimony demonstrated the formality of the process he received. He testified that when the INS detained him, officers informed him of his inadmissibility to the United States. Further, he testified that officers told him that he could return to Mexico voluntarily, or if he desired, a judge could determine his eligibility to enter the country. Specifically, Garcia testified: "They told me that . . . I could sign [a] voluntary departure deportation paper, or if I wanted to, I . . . could have a lawyer to . . . see the [immigration] [j]udge." AR 109. Accordingly, Garcia's situation differs from that of the alien involved in Avilez-Nava. Garcia was "made aware of the opportunity for exclusion proceedings" and understood that he could avail himself of procedures to determine his eligibility

Because the Government does not suggest that the BIA could deny Garcia's application absent a formal process, we assume it is necessary to the BIA's disposition.

11

for entry.  Cf. Avilez-Nava, 23 I. & N. Dec. at 805.  We are not faced with an alien merely "turned away" at the border.  See id.

Moreover, Garcia's process was documented.  The DHS introduced a US-VISIT report, which indicated that Garcia was stopped at the border and engaged with INS officers.  To be sure, the report did not indicate the manner by which Garcia departed the country or what was said to him before he left.  But it did state the date and time of Garcia's apprehension and showed that INS officers fingerprinted and photographed him.  We cannot conclude that the BIA erred in finding that this document, together with Garcia's testimony, showed that Garcia departed the United States pursuant to a "formal, documented process."

Tapia v. Gonzales, 430 F.3d 997 (9th Cir. 2005), on which Garcia relies, is not to the contrary.  There, the Ninth Circuit held that a record establishing the fact of an alien's fingerprinting did not establish the fact of his formal departure.  Id. at 1002.  But in that case, the alien offered no testimony regarding the level of formality by which he departed the country.  Though officers detained him and took his fingerprints, the interaction could have preceded either a formal or an informal departure.  Here, Garcia testified to his receipt of a formal process.  The US-VISIT report served only to

12

memorialize an encounter, the particulars of which were established by the alien's own testimony.

The BIA's analysis and our conclusion comport with the burden-shifting standard of the INA. As an applicant for cancellation of removal, Garcia bore the burden of proving that he was eligible for relief. Salem, 647 F.3d at 116. To prevail, he had to show that he was not subject to a documented process by which he left the country. On this point, Garcia's testimony was unclear. He did not expressly state whether he signed any documents -- or failed to sign any documents -- leaving the BIA to guess whether he was eligible for relief. Our precedent counsels the BIA to resolve such ambiguities against Garcia. Id. at 120 ("where . . . the relevant evidence . . . is in equipoise, a petitioner has not satisfied his burden to prove eligibility for relief from removal."). In accord with our directives, the BIA correctly rejected Garcia's application for cancellation of removal.

V.

For the reasons stated above, Garcia's petition for review is

DENIED.

13