# Matter of Enrique CASTREJON-COLINO, Respondent

*Decided October 28, 2015*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Where an alien has the right to a hearing before an Immigration Judge, a voluntary departure or return does not break the alien's continuous physical presence for purposes of cancellation of removal under section 240A(b)(1)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1)(A) (2012), in the absence of evidence that he or she was informed of and waived the right to such a hearing. *Matter of Avilez*, 23 I&N Dec. 799 (BIA 2005), clarified.

(2) Evidence that an alien who had the right to a hearing before an Immigration Judge was fingerprinted and/or photographed before being allowed to voluntarily depart is not enough, in itself, to demonstrate a waiver of the right to a hearing or to show a process of sufficient formality to break continuous physical presence.

FOR RESPONDENT: Rachel Effron Sharma, Esquire, Atlanta, Georgia

FOR THE DEPARTMENT OF HOMELAND SECURITY: Morris I. Onyewuchi, Assistant Chief Counsel

BEFORE: Board Panel: GRANT, MILLER, and GUENDELSBERGER, Board Members.

GUENDELSBERGER, Board Member:

In a decision dated January 25, 2012, an Immigration Judge pretermitted the respondent's application for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(b)(1) (2012), finding that his continuous physical presence was terminated by his January 2001 voluntary return to Mexico. The respondent has appealed from that decision. The appeal will be sustained and the record will be remanded to the Immigration Judge for further proceedings.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who first entered the United States in 1992. In December 2000, he departed to visit family in Mexico. After a 6-week absence, he reentered the United States unlawfully in January 2001. He was apprehended by Border Patrol agents, fingerprinted and photographed, and asked to sign the screen of a small

electronic device that displayed unknown content.  The respondent voluntarily returned to Mexico and, within days of his departure, reentered the United States.  His next encounter with immigration officials in May 2009 resulted in the preparation of a Record of Deportable/Inadmissible Alien (Form I-213) and service of the notice to appear commencing these removal proceedings.

In proceedings before the Immigration Judge, the respondent conceded removability and submitted an application for cancellation of removal.  The Department of Homeland Security ("DHS") moved to pretermit the application, arguing that the respondent's voluntary return in January 2001 broke his continuous physical presence before he had accrued the necessary 10-year period to establish eligibility for that relief.

The respondent contends that the abbreviated process associated with his January 2001 voluntary return, which he claims took approximately 2 minutes, was not sufficiently formal to break his physical presence.  He states that he was not threatened with removal proceedings or provided any explanation of rights or warnings.  The respondent therefore asserts that his voluntary return was not made with any agreement that his departure was in lieu of being placed in removal proceedings.

## II.  ISSUE

The issue in this case is whether the evidence in the record establishes that the respondent's voluntary return to Mexico was a formal, documented process sufficient to break his continuous physical presence for purposes of establishing eligibility for cancellation of removal.

## III.  ANALYSIS

An alien seeking cancellation of removal must demonstrate physical presence in the United States "for a continuous period of not less than 10 years immediately preceding the date of such application."  Section 240A(b)(1)(A) of the Act.  The continuity of physical presence is broken by a departure from the United States "for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days."  Section 240A(d)(2) of the Act.

The presence-breaking rule described in section 240A(d)(2) is not the exclusive measure of what departures may terminate a period of physical presence.  In *Matter of Romalez*, 23 I&N Dec. 423 (BIA 2002), we concluded that a departure with the knowledge that a voluntary return is in lieu of being placed in deportation or removal proceedings is an enforced departure that likewise ends continuous physical presence.  In that regard,

we stated that such circumstances create "no legitimate expectation . . . that an alien could illegally reenter and resume a period of continuous physical presence." *Id.* at 429. The courts in nine circuits have agreed with our conclusion in *Romalez* that continuous physical presence can be terminated by a departure or departures of shorter duration than those specified in section 240A(d)(2) of the Act.[1]

In *Matter of Avilez*, 23 I&N Dec. 799 (BIA 2005), we addressed the situation of an alien who was permitted to return to Mexico after being refused admission during an undocumented encounter with an immigration official at a land border port of entry. We held that such a voluntary return will not break an alien's continuous physical presence unless there is evidence that the alien (1) was formally excluded or made subject to an order of expedited removal; (2) was offered and accepted the opportunity to withdraw an application for admission; or (3) was "subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States." *Id.* at 805−06.

At the time of her departure, the alien in *Avilez* had a right to a hearing before an Immigration Judge in formal exclusion proceedings.[2] However, the evidence in that case did not show that she was aware of the opportunity

---

[1] *See Garcia v. Holder*, 732 F.3d 308 (4th Cir. 2013); *Barrera-Quintero v. Holder*, 699 F.3d 1239 (10th Cir. 2012); *Vasquez v. Holder*, 635 F.3d 563 (1st Cir. 2011); *Ascencio-Rodriguez v. Holder*, 595 F.3d 105 (2d Cir. 2010); *Mendez-Reyes v. Att'y Gen. of U.S.*, 428 F.3d 187 (3d Cir. 2005); *Morales-Morales v. Ashcroft*, 384 F.3d 418 (7th Cir. 2004); *Palomino v. Ashcroft*, 354 F.3d 942 (8th Cir. 2004); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213 (5th Cir. 2003); *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961 (9th Cir. 2003) (per curiam). The United States Courts of Appeals for the Sixth and Eleventh Circuits have yet to rule on this issue in published decisions.

[2] Depending on the date and location of the relevant encounter with immigration officials, an alien may or may not have a right to a hearing before an Immigration Judge in formal exclusion, deportation, or removal proceedings. Aliens who are subject to being placed in expedited removal proceedings generally do not have a right to a hearing before an Immigration Judge. *See* 8 C.F.R. §§ 235.3(b)(2)(ii), 1235.3(b)(2)(ii) (2015).

The record reflects that the respondent was returned to Mexico in 2001. At that time, the expedited removal provisions in section 235(b)(1) of the Act, 8 U.S.C. § 1225(b)(1) (2000), which were enacted in 1996, were being applied to aliens arriving at ports of entry, but not to those apprehended within the United States. *See* 8 C.F.R. § 235.3(b)(1)(i). Although the DHS had the authority to expand the use of expedited removal proceedings, it did not exercise that authority until 2004, when it included certain aliens who are encountered in the 100-mile border zone within 14 days of entry. *See* section 235(b)(1)(A)(iii) of the Act; 8 C.F.R. §§ 235.3(b)(1)(ii), 1235.3(b)(1)(ii); Designating Aliens For Expedited Removal, 69 Fed. Reg. 48,877, 48,880 (Aug. 11, 2004) (providing notice of the DHS's exercise of its authority). Thus, the respondent was not subject to expedited removal proceedings and would have had a right to a hearing before an Immigration Judge.

for exclusion proceedings; was offered and accepted the opportunity to withdraw her application for admission; or was otherwise subjected to another formal, documented process where she was determined to be inadmissible. *Id.* at 803, 805, 807. We therefore concluded that her acquiescence to the immigration officer's instruction to return to Mexico did not break her physical presence. *Id.* at 807.

The salient point to be taken from *Avilez* is that a voluntary departure will not break the alien's continuous physical presence unless there is evidence that he or she knowingly accepted its terms.[3] *Id.* at 805. An "acceptance of the terms" of a voluntary departure or return requires knowledge that the alternative is the initiation of proceedings to remove the alien from the United States. *Id.*; *see also Matter of Romalez*, 23 I&N Dec. at 429 (finding that an enforced voluntary return breaks continuous physical presence because "[t]he alien leaves with the knowledge that he does so in lieu of being placed in proceedings").

Simply put, there must be evidence that the alien was made aware of the possibility of appearing at a hearing before an Immigration Judge and affirmatively agreed to depart in lieu of being subjected to removal proceedings.[4] *See Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 908 (8th Cir. 2005) (stating that "before it may be found that a presence-breaking voluntary departure occurred, the record must contain some evidence that the alien was informed of and accepted its terms"); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 427−28 (7th Cir. 2004) (stating that a voluntary return following an arrest for reentry without inspection will not break continuous physical presence where the record lacks evidence of any threat that the alternative was a hearing in removal proceedings).

In case law addressing the presence-breaking character of a voluntary departure or return, the Board and the courts have considered whether the evidence shows a process of sufficient formality that the alien was made aware of the choice between returning voluntarily or being subjected to more formal procedures to expel him or her from the United States. *See, e.g.*, *Reyes-Sanchez v. Holder*, 646 F.3d 493, 498 (7th Cir. 2011) (stating that in determining whether continuous physical presence is broken by a voluntary return, the court examines whether the alien "faced a formal,

---

[3] This is true regardless of whether it is referred to as a "departure," "return," "turn back," or "turnaround."

[4] The alternative option to have a hearing before an Immigration Judge is variously described in case law as an "opportunity" or a "threat." *See, e.g.*, *Matter of Avilez*, 23 I&N Dec. at 805. Which term is more accurate from a particular alien's perspective depends on whether the likely result of such a hearing would be the entry of a removal order if the alien does not have a colorable defense to the charge or a realistic possibility of obtaining relief.

documented process at the border, and chose to depart under threat of removal"). In *Avilez*, we included fingerprints and photographs as examples of evidence that might be associated with a "formal, documented process." *Matter of Avilez*, 23 I&N Dec. at 805−06. Also included as possible evidence of a legally enforced refusal of admission and return were a Form I-213, a Notice of Action-Voluntary Departure (Form I-210), IDENT documents, statements or testimony from the alien or immigration officials, and other appropriate immigration forms or official records. *Id.* at 806. However, since none of that evidence was present in *Avilez*, we did not reach the question whether the listed evidence might individually, or in any specific combination, suffice to establish a presence-breaking departure.

The evidence required to show a process of sufficient formality to break continuous physical presence will depend on the circumstances of each case. It has been determined that "merely fingerprinting or photographing the alien would not constitute sufficient formality to break his continuous physical presence." *Valadez-Munoz v. Holder*, 623 F.3d 1304, 1311 (9th Cir. 2010) (citing *Tapia v. Gonzales*, 430 F.3d 997, 1003 (9th Cir. 2005)). We agree that evidence that an alien was fingerprinted and/or photographed before being allowed to voluntarily depart is not enough, in itself, to show a process of sufficient formality to break continuous physical presence. *See Garcia v. Holder*, 732 F.3d 308, 312−13 (4th Cir. 2013) (finding that the alien's presence was broken where his encounter was not only documented with a form indicating that he had been fingerprinted and photographed, but the formality of the process was also established by his own testimony that he was informed of his inadmissibility and was given a choice between returning to Mexico or having a hearing before an Immigration Judge).

Most of the circuit courts that have addressed this question have looked to whether there is evidence that the alien was advised of and waived the right to have a hearing before an Immigration Judge. *See, e.g.*, *Rosario-Mijangos v. Holder*, 717 F.3d 269, 279−80 (2d Cir. 2013) (finding that the alien's continuous physical presence was terminated where he was informed of his right to appear before an Immigration Judge and chose to return to Mexico voluntarily in lieu of being placed in proceedings); *Reyes-Sanchez v. Holder*, 646 F.3d at 497−99 (finding a break in the alien's continuous physical presence where she received a form notifying her of her right to request a hearing before an Immigration Judge). Consistent with this jurisprudence, we conclude that where an alien has a right to a hearing before an Immigration Judge, there must be reliable testimonial and/or documentary evidence in the record to establish that the alien was informed of that right and waived it before a voluntary departure will be

considered a sufficiently formal process to break his or her physical presence.

As time continues to pass since the 1996 enactment of section 235(b)(1)(A)(iii) of the Act and the 2004 expansion of the DHS's expedited removal authority, cases will, with increasing frequency, involve departures by aliens who would otherwise be subject to expedited removal proceedings, in which there is generally no right to a hearing before an Immigration Judge. *See supra* note 2. We therefore emphasize that in cases where the presence-breaking character of a voluntary departure is at issue, Immigration Judges and the parties should ensure that the record is fully developed regarding (1) the date and place of the encounter underlying the purported presence-breaking departure; (2) the possibility that the alien was alternatively subject to exclusion, deportation, or removal proceedings in which there was a right to a hearing before an Immigration Judge; and (3) the formality of the process used, including how the threat of proceedings was communicated to the alien, what advisals were given, and whether the alien had knowledge that the agreement to depart was in lieu of being placed in proceedings.[5]

The record in this case lacks sufficient evidence to show that the respondent was informed that he had a right to a hearing before an Immigration Judge and understood that his departure was in lieu of being placed in removal proceedings.[6] The fact that he was fingerprinted and photographed is not alone enough to show a sufficiently formal process to interrupt his physical presence. The only Form I-213 in the record relates to the May 2009 encounter that triggered the initiation of these proceedings, rather than his January 2001 departure. Moreover, its contents offer no

---

[5] In many cases, the relevant events will have occurred in the distant past, and the alien may be able to offer only general testimony describing an imperfect recollection of what transpired during the encounter. Although the alien ultimately bears the burden of proving the required continuous physical presence, the DHS is in a better position to fill gaps in the evidence and resolve any disputes by presenting documentation in its own records to show the formality of the process. In *Matter of Avilez*, 23 I&N Dec. at 806, we suggested several forms that could be used to provide such evidence. The Notice of Rights and Request for Disposition (Form I-826) is another possibility. Unless the regulations expressly require the DHS to use a specific form, no particular one is mandated. We recognize in this regard that the DHS frequently modifies its forms and that various districts use forms specific to their jurisdiction to document encounters and departures.

[6] We note that a document bearing the respondent's photograph indicates that his January 2001 apprehension occurred in Pine Valley, California. However, based on the undisputed facts in this case, we find that he is not a member of the class that will benefit from the class action settlement agreement approved in *Lopez-Venegas v. Johnson*, No. CV 13-03972-JAK (PLAx) (C.D. Cal. Mar. 11, 2015).

insight into the formality of the process used when the respondent made that departure. The only document submitted by the DHS that was created contemporaneously with the respondent's voluntary return is captioned "EARM Encounter Details." That document bears the respondent's photograph, but it was not signed and did not inform him of the alternative of removal proceedings, including his right to a hearing before an Immigration Judge.

Under these circumstances, we conclude that the evidence does not show a process of sufficient formality to break the respondent's continuous physical presence. Accordingly, the respondent's appeal will be sustained. Since the Immigration Judge did not make findings of fact or conclusions of law regarding the respondent's eligibility for cancellation of removal, the record will be remanded to allow him to apply for that relief and any other for which he may be eligible.

## IV. CONCLUSION

We clarify *Matter of Avilez* and hold that where an alien had the right to appear before an Immigration Judge, evidence that photographs and fingerprints were taken in conjunction with a voluntary departure or return is insufficient to break the alien's continuous physical presence in the absence of evidence that he or she was informed of and waived the right to a hearing.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and entry of a new decision.